# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID K. SULLIVAN, as Trustee, of the THOMAS P. SULLIVAN IRREVOCABLE TRUST DATED DECEMBER 27, 1991, | )<br>)<br>)<br>) Case No. 19-cv-2678<br>) |
| Plaintiff, | ) Judge Sharon Johnson Coleman<br>) |
| v. | )<br>) |
| TRANSAMERICA LIFE INSURANCE COMPANY, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff David K. Sullivan, as Trustee of the Thomas P. Sullivan Irrevocable Trust, brought this two-count complaint against Transamerica Life Insurance Company alleging breach of contract and Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") claims. Transamerica has moved to dismiss the entire complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the Court grants Transamerica's motion to dismiss with prejudice.

**Background**

The following facts are summarized from the complaint and attachments to the complaint, including the insurance policy and the assured coverage endorsement at issue. On August 10, 2002, David Sullivan on behalf of the Trust purchased a universal life insurance policy for his brother Thomas P. Sullivan as the insured. The policy had both life insurance and savings features with a face value and death benefit of $1,000,000. As to the savings feature, after the cost of insurance (monthly deductions) are subtracted from the premium payments, the remainder is applied to the accumulation value of the policy that has a guaranteed minimum interest rate of 4%. As the policy data indicates, the accumulation value may decrease over the life of the insurance policy.

The required annual premium for the first five years of the policy was $27,520. After the five-year required premium period, the policy allows for flexible payments, as long as the net cash value of the policy is above a certain threshold. If the net cash threshold is insufficient, the policy will lapse after a 60-day grace period. Under the assured coverage endorsement, however, if the Trust continued to pay the annual premium of $27,520 after the five-year required premium period, the policy would not lapse—even if the net cash value is insufficient to pay the costs of insurance.

The Trust alleges that it timely paid an annual premium of $27,520 from 2002 through 2008. According to the Trust, in August 2009, Tom Sullivan had a conversation with a Transamerica agent who told him that the 2019 premium would be taken from the cash value of the policy. The Trust also alleges that on August 17, 2010, a Transamerica agent told Tom Sullivan that the 2010 premium would be taken out of the policy's cash value on a monthly basis and that there was enough cash value for the coming year.

Thereafter, the Trust alleges that it paid the $27,520 premium every year from 2011 until 2018. On August 15, 2018, Transamerica sent a letter to the Trust stating:

> Your policy has entered its grace period and is in danger of lapsing. Additionally, your Policy Threshold, minus any existing policy loan(s), is less than zero and therefore does not meet the requirements to keep your ACE [assured coverage endorsement] provision in effect on your policy…. We are therefore providing you information on how to maintain the ACE provision and, alternatively, the amount needed to maintain coverage without reliance on ACE.

The letter explained that a payment of $15,996 by September 14, 2018 would maintain the assured coverage endorsement. It also stated that because "your policy's value is not sufficient to cover the current Monthly Deductions," to continue coverage without the benefit of the assured coverage endorsement, a minimum payment of $99,245 was due by October 14, 2018. In September 2018, Tom Sullivan paid the $15,996 under the first option. On March 15, 2019, Transamerica sent another letter detailing that the policy was in its grace period and in danger of lapsing. Instead of

2

making a payment to continue coverage, the Trust filed this lawsuit seeking the $15,996 that Transamerica "improperly" demanded in August 2018, plus $60,000, attorney's fees, and costs.

**Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts all well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A complaint is facially plausible when plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). When ruling on a motion to dismiss, courts "may consider documents attached to the pleadings so long as the documents are referred to in the complaint and central to the plaintiff's claims." *Doe v. Columbia College Chicago*, 933 F.3d 849, 854 (7th Cir. 2019). "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

**Discussion**

The Trust alleges a breach of contract claim in Count I of its complaint. Under Illinois law, when ascertaining the meaning of an insurance policy's language and the parties' intent, courts must construe the policy as a whole taking into account the type of insurance at issue. *Windridge of Naperville Condo. Assoc. v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019). As with all contracts, if the policy language is unambiguous, courts will enforce the policy as written. *Id.*;

3

*Thounsavath v. State Farm Mutual Auto. Ins. Co.*, 104 N.E.3d 1239, 1244, 423 Ill.Dec. 150, 155, 2018 IL 122558, ¶ 17 (Ill. 2018). If the policy is ambiguous, courts can consider extrinsic evident to determine the parties' intent. *Soarus LLC v. Bolson Materials Int'l Corp.*, 905 F.3d 1009, 1011 (7th Cir. 2018).

The Trust argues that Transamerica breached the insurance contract by charging more than the annual fixed premium of $27,520 in 2018 and 2019. Instead of pointing to an express provision of the policy to support its assertion that the annual premium was fixed at $27,520 throughout the life of the policy, the Trust relies on a sales illustration from July 2002, a portion of which is attached to the complaint. This illustration—which unequivocally states "this is an illustration not a contract"—shows a table of the insured's age and year of the policy over an 18-year period, the projected accumulated cash value with the guaranteed 4% interest rate, and the non-guaranteed projected cash values based on the assumption that the premium was $27,520 a year for 18 years.

Under strikingly similar circumstances, the Illinois Appellate Court held that sales illustrations are extrinsic evidence that courts can only consider if the insurance policy's language is ambiguous. *Benedict v. Federal Kemper Life Assur. Co.*, 759 N.E.2d 23, 27, 259 Ill.Dec. 543, 325 Ill.App.3d 820 (1st Dist. 2001). Here, the Trust fails to point to any ambiguity in the policy, but rather argues that the 2002 sales illustration is clear and unambiguous. Because there is no alleged ambiguity in the policy, the Court cannot consider the 2002 sales illustration as extrinsic evidence in interpreting the parties' intent.

The Trust further asserts that Transamerica breached the life insurance policy when it unilaterally modified it. Specifically, the Trust argues that it "accepted" Transamerica's "offer" of using the cash reserves to pay the 2009 and 2010 premiums, which resulted in Transamerica increasing the annual premium above the "fixed" rate of $27,520 and subtracting two years from

the life of the contract. The Trust's argument fails for several reasons, including the faulty premise that there was a "fixed" annual premium rate of $27,520. Also, as above, the Trust relies on the 2002 sales illustration to support its argument that this fixed premium rates would last for at least 18 years. Equally important, without consideration and mutual assent, any such "unilateral modification" is unenforceable under Illinois law. *Urban Sites of Chicago, LLC v. Crown Castle USA*, 979 N.E.2d 480, 493, 365 Ill.Dec. 876, 889, 2012 IL App (1st) 111880, ¶ 38 (1st Dist. 2012). As such, the parties are bound by the terms of the original insurance policy, which did not set a fixed annual premium amount, but instead provided the calculations and limitations of premium payments under the "Premiums" section of the contract.

Turning to the Trust's argument about the grade period notices, the policy states that once the net cash value is insufficient to pay the costs of the insurance, the policy would enter into a grace period. After entering into the grace period, the policy explains that Transamerica "will let you know by sending a notice to your last known address. The notice will tell you the amount you must pay" to keep the policy in force. Therefore, the Trust's claim that Transamerica breached the insurance contract by sending grace period notices is wholly without merit. The Court grants Transamerica's motion to dismiss Count I with prejudice.

In Count II, the Trust alleges that Transamerica engaged in deceptive business practices violating the ICFA, 815 ILCS 505/1, *et seq*. "To recover on a claim under the Act, a plaintiff must plead and prove that the defendant committed a deceptive or unfair act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Vanzant,* 934 F.3d at 736. When analyzing whether an act is deceptive, courts look to the totality of the information defendant insurer made available to the plaintiff. *Toulon v. Continental Cas. Co.*, 877 F.3d 725, 739 (7th Cir. 2017). "Deception does not exist if a consumer has

5

been alerted to the possibility of the complained-of result." *Newman v. Metropolitan Life Ins. Co.*, 885 F.3d 992, 1001 (7th Cir. 2018); *see, e.g., Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

Here, the Trust argues that Transamerica agents "tricked" it into modifying the insurance contract to its detriment making the policy "far more costly." In support of this argument, the Trust alleges that a Transamerica agent told Tom Sullivan in 2009 that the policy had a cash value of $61,000, which was sufficient to cover that year's premium. The Trust further alleges that Transamerica confirmed this request in a letter dated September 3, 2009, which states:

> Your policy gives you the option to skip payments as long as there is sufficient value to cover the *costs of insurance*. The *cost of insurance* will be deducted automatically each month. We will advise you in writing if there is insufficient value to cover the cost of insurance.

(Compl. ¶ 12; Ex. 6, 9/3/09 letter.) (emphasis added).

As the policy makes clear, the costs of insurance (monthly deductions) are not the same as premiums. As discussed, the policy section entitled "Premiums" speaks to the calculations and limitations of premium payments. This and other language in the policy put the Trust on notice that premium payments could vary and were flexible. The monthly deduction rate section of the policy, on the other hand, describes the calculation of the costs of insurance explaining that the monthly deduction rates may vary from month-to-month and year-to-year. By way of illustration, in correspondence attached to the complaint, Transamerica provided a summary activity report for the policy period of August 2017 to August 2018 showing that the total monthly deductions for that year was $48,917.99.

The August 2017 to August 2018 statement of policy value also included the following notice: "Your Net Cash Value may not be sufficient to maintain coverage under this contract for another year." Likewise, the policy itself warned the Trust about a lapse of coverage if the net cash value was insufficient: "If you stop paying premiums after the Required Premium Period, your

6

coverage will continue until the net cash value is insufficient to pay the monthly deduction due. At that time, your policy will enter the grace period." Accordingly, the policy and Transamerica's correspondence alerted the Trust to the risks involved when there was insufficient net cash value.

Viewing all of the information available to the Trust, and despite the Trust's allegations that it was "tricked," the policy and correspondence explained the risks involved, yet the Trust misconstrued these materials. *See Newman*, 885 F.3d at 1001; *see, e.g., Toulon*, 877 F.3d at 739. On the face of the policy, there was no guarantee that the annual premiums would not increase through 2020, an allegation that is the foundation of the Trust's ICFA claim. Accordingly, the Trust has failed to sufficiently alleged that Transamerica engaged in a deceptive act or practice. The Court therefore grants the Transamerica's motion to dismiss Count II with prejudice.

**Conclusion**

Based on the foregoing, the Court grants defendant's motion to dismiss with prejudice. [11]. Civil case terminated.

IT IS SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: 12/12/2019